**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                       :
MICHAEL BOROZAN, on behalf of   :
himself and all others similarly situated.  :
                       :
            Plaintiffs,   :     Civil Action No.: 17-11542(FLW)
                       :
      v.              :
                       :      **OPINION**
FINANCIAL RECOVERY SERVICES,  :
INC., and JOHN DOES 1-25     :
                       :
           Defendants.  :
_____:

**WOLFSON, United States District Judge:**

This putative class action arises out of Plaintiff Michael Borozan's ("Plaintiff") claim that Financial Recovery Services Inc. ("Defendant" or "FRS") violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq,* by sending a false or misleading debt collection letter that failed to effectively inform Plaintiff what he must do in order to dispute the alleged debt. In the present matter, Defendant moves to dismiss Plaintiff's FDCPA claims pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, Defendant's motion to dismiss is **GRANTED**.

## BACKGROUND

For purposes of this motion, the facts alleged by Plaintiff in his Complaint are taken as true. Plaintiff is a resident of Warren County, New Jersey, and FRS is a debt collection agency that maintains a business in Edina, Minnesota. Compl. ¶¶ 6–7. The parties do not dispute that Plaintiff is a "consumer," and that Defendant is a "debt collector" under the statutory definitions of the FDCPA. *Id.* at ¶¶ 6, 9; *see also* 15 U.S.C. §§ 1692a(3) & (6). The FDCPA claims in this case arise

from a single letter sent by FRS regarding a consumer debt incurred by Plaintiff to TD Bank USA, N.A., in the amount of $346.43. *Id.* ¶¶ 15-16.[1] The April 21 letter is divided into a header, the body of the text and a detachable coupon book.

The header reads:

FINANCIAL RECOVERY SERVICES, INC.
P.O. Box 385908
Minneapolis, MN 55438-5908
1-877-875-2668

CURRENT CREDITOR: TD BANK USA, N.A.
REGARDING: TARGET CREDIT CARD
DATE OF LAST PAYMENT: 09/04/15
CHARGE-OFF DATE: 04/14/16
**BALANCE ITEMIZATION**
COST BALANCE: $0.00
FRS FILE NUMBER:
ON-LINE PIN NUMBER:
(Used to access and view your file on WWW.FIN-REC.COM)

The text of the body is printed on one side, aligned to the left, and displayed in consistent font, expect for a single underlined hyperlink. The text reads:

******INITIAL NOTIFICATION******

The account(s) listed above have been assigned to this agency for collection. We are a professional collection agency attempting to collect a debt. Any information obtained will be used for this purpose.

You owe $346.43. Please feel free to call us at the toll free number listed below or use our online consumer help desk. FRS now accepts some forms of payment online at www.fin-rec.com. See our online access pin above.

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume

---

[1] Plaintiff attaches the letter to the Complaint as Exhibit A. In reviewing the motion to dismiss the Court may consider any documents attached to, and referenced by, the Complaint. *See Rosa v. Encore Receivable Management Inc.*, 2016 U.S. Dist. LEXIS 112104, at *3 n.1, (D.N.J. August 23, 2016) (*citing M & M Stone Co. v. Pennsylvania*, 388 F. App'x. 156, 162 (3d Cir. 2010)).

this debt is valid. If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt or any other portion thereof, this office will obtain verification of the   debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different from the current creditor.

If you are sending your payment by overnight delivery please use the following address: 4510 W. 77th ST, Suite 200, Edina MN 55435.

This communication is from a debt collection agency licensed by the Minnesota Department of Commerce.

Sincerely,
ANDREW POULTERER
Account Manager
Toll Free: 1-877-875-2668

Beneath the signature line, the letter concludes with the following information:

This is an attempt to collect a debt. Any information obtained will be used for that purpose. This communication is from a debt collector.
**See reverse side for important information.**
Office hours are Monday-Thursday, 7am to 8pm; Friday 7am to 5pm; Saturday 7am to noon.

On the reverse side of the letter are three detachable coupons labeled with the instructions:

"Detach Coupon And Mail Payment." Each box includes the following information: (i) FRS File

#:; (ii) the telephone number 1-877-875-2668; and (iii) balance due as of April 21, 2017: $346.43.

Beneath that information was a section for the consumer to fill out requesting amount enclosed,

home phone, work phone, cell phone. The FRS mailing address appears below:

Financial Recovery Services, Inc.
P.O. Box 385908
Minneapolis, MN 55438-5908

Based on this communication, Plaintiff alleges that FRS violated (i) 15 U.S.C. §

1692g(a)(3) for failure to effectively inform what he must do in order to dispute the alleged debt.

Compl. ¶¶ 43-47; and (ii) 15 U.S.C. § 1692e(10) by falsely representing and misleading plaintiff

into believing that if he wished to dispute the alleged debt or any portion thereof, he could contact FRS by phone or mail, when in fact a debtor must dispute a debt in writing. Compl. ¶¶ 50-55.

In the present matter, Defendant moves to dismiss Plaintiff's claims, arguing that the Complaint fails to state a claim under the FDCPA.

## DISCUSSION

### I.    Standard of Review

In reviewing a motion to dismiss on the pleadings, the court "accept[s] all factual allegations as true, construe[s] the complaint in the light most favorable to the plaintiff, and determine[s] whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted). As such, a motion to dismiss for failure to state a claim upon which relief can be granted does not attack the merits of the action but merely tests the legal sufficiency of the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009); *see also* Fed. R. Civ. P. 8(a)(2) ("[a] pleading that states a claim for relief ... must contain a short and plain statement of the claim showing the pleader is entitled to relief"). In other words, to survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

However, "the tenet that a court must accept as true all the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). A plaintiff must show that there is "more than a sheer possibility that the defendant has act[ed] unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). This

plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). In other words, for the plaintiff to prevail, the "complaint must do more than allege the plaintiff's entitlement to relief;" it must " 'show' such an entitlement with its facts." *Fowler*, 578 F.3d at 211 (citing *Phillips*, 515 F.3d at 234–35).

The Third Circuit has cautioned, however, that *Twombly* and *Iqbal* "do not provide a panacea for defendants," rather, "they merely require that plaintiff raise a 'plausible claim for relief.'" *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937). Thus, factual allegations must be more than speculative, but the pleading standard "is not akin to a 'probability requirement.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937; *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955).

## II.     FDCPA Statutory Overview

The Fair Debt Collection Practices Act "is a consumer protection statute that prohibits certain abusive, deceptive, and unfair debt collection practices." *Marx v. Gen. Revenue Corp.*, 133 S. Ct. 1166, 1171 n.1 (2013) (citing 15 U.S.C. § 1692). By its terms, the purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors" while insuring that "debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. § 1692. Relevant to the present matter, the Act requires that within five days of the initial communication with a consumer in connection with the collection of a debt, debt collectors must provide the consumer with written notice containing certain information regarding the debt. 15 U.S.C. § 1692g. Additionally, the Act prohibits the use of any "false, deceptive, or

misleading representations or means in connection with the collection of any debt." 15 U.S.C. § 1692e.

The statute creates a private right of action against debt collectors who fail to comply with its provisions. 15 U.S.C. § 1692k; *Marx*, 133 S. Ct. at 1171 n.1; *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3rd Cir. 2006). To state a claim under the FDCPA, a plaintiff must establish that "(1) he or she is a 'consumer' who is harmed by violations of the FDCPA; (2) the 'debt' arises out of a transaction entered into primarily for personal, family, or household purposes; (3) the defendant collecting the debt is a 'debt collector'; and (4) the defendant has violated, by act or omission, a provision of the FDCPA." *Grant v. JP Morgan Chase Bank*, No. 12-6248, 2013 U.S. Dist. LEXIS 51551, at *5 (D.N.J. Apr. 10, 2013) (quoting *Berk v. J.P.Morgan Chase Bank*, N.A., No. 11-2715, 2011 U.S. Dist. LEXIS 109626, at *8 (E.D. Pa. Sept. 26, 2011) (citing 15 U.S.C. §§ 1692a-o)). Additionally, "[a] threshold requirement for application of the FDCPA is that the prohibited practices are used in an attempt to collect a 'debt'." *Zimmerman v. HBO Affiliate Grp.*, 834 F.2d 1163, 1167 (3rd Cir. 1987).

Because the FDCPA is a remedial statute, the Third Circuit has construed its language broadly so as to give effect to its purpose. *Brown*, 464 F.3d at 453. Accordingly, courts analyze "any lender-debtor communications potentially giving rise to claims under the FDCPA" from the perspective of an objective "least sophisticated debtor." *Id.* at 454. The Third Circuit has explained that the least sophisticated debtor standard "is lower than the standard of a reasonable debtor" such that "a communication that would not deceive or mislead a reasonable debtor might still deceive or mislead the least sophisticated debtor." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3rd Cir. 2008) (internal quotations and citations omitted). Applying this standard gives effect to "the basic purpose of the FDCPA: ... to protect all consumers, the gullible as well as the shrewd, the trusting

as well as the suspicious, from abusive debt collection practices." *Brown*, 464 F.3d at 454 (internal quotations and citations omitted). Nevertheless, "the standard does not go so far as to provide solace to the willfully blind or non-observant." *Caprio v. Healthcare Revenue Recovery Grp.*, 709 F.3d 142, 149 (3rd Cir. 2013) (quoting *Campuzano-Burgos v. Midland Mgmt. Inc.*, 550 F.3d 294, 299 (3rd Cir. 2008)). In other words, although the standard is "less demanding than one that inquires whether a particular communication subject to the FDCPA would mislead or deceive a reasonable debtor," it "is still held to a quotient of reasonableness, a basic level of understanding, and a willingness to read with care." *Id.* at 149 (internal quotations and citations omitted). Accordingly, the debt collector "cannot be held liable for bizarre or idiosyncratic interpretations." *Id.* (citing *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354-55 (3rd Cir. 2000)). Importantly, the least sophisticated debtor is expected to read any collection notice in its entirety. *Id.* (citing *Lesher v. Law Offices of Mitchell N. Kay*, 650 F.3d 993, 997 (3rd Cir. 2011)).

Furthermore, under the Third Circuit's FDCPA jurisprudence, because the "least sophisticated debtor" is an objective standard, the determination of how debt collection communications would be perceived by the "least sophisticated debtor" is a question of law. *See Wilson*, 225 F.3d at 353 n.2; *Caprio*, 709 F.3d at 147; *see also Bodine v. First Nat'l Collection Bureau, Inc.*, No. 10-2472, 2010 U.S. Dist. LEXIS 131352, at *8, 2010 WL 5149847 (D.N.J. Dec. 13, 2010) (citing *Wilson*, 225 F.3d at 353 n.2) ("The question of whether a collection letter or notice violates the provisions of the FDCPA is a question of law to be determined by the Court.").

## III.    15 U.S.C § 1692g

The Complaint alleges that Defendant violated 15 U.S.C. § 1692g(a)(3) by sending an initial communication, i.e. the April 21, 2017 Letter, that failed to effectively inform Plaintiff what he must do in order to dispute the alleged debt. Compl. ¶ 49. Plaintiff argues that the validation

notice invites a debtor to call ("please feel free to call") without providing information as to what the debtor may call about. Pl. Opp. To Mot. To Dis. 8. Plaintiff argues that by not explicitly informing the debtor that any disputes ***"must"*** be in writing, the letter implicitly suggests that the debtor could dispute the debt by calling or visiting the online help desk. Compl. ¶¶ 47-49; Opp. To Mot. to Dism., 2. Additionally, Plaintiff argues that Defendant must provide explicit instructions as to the type of issues for which the debtor may call the toll free telephone number. Def. Opp. To Mot. To Dis., 5. Moreover, Plaintiff contends that the invitation to call is particularly suggestive because it is located right above the validation notice and directly next to the sentence "You owe $346.43," and that the phone number is listed in 5 different places on the letter. *Id.* at 8,10. Based on its form and content, Plaintiff argues that the "least sophisticated consumer" could reasonably interpret the Letter as inviting the consumer to call in order to dispute or discuss the debt, when the law requires a written notice. Compl. ¶¶ 51-53. In response, Defendant submits that the Letter effectively conveys the required information by complying with the plain language of § 1692g. Mot. To Dis., 5. More specifically, Defendant argues that the paragraph referencing the toll-free number cannot reasonably be interpreted by the least sophisticated consumer as an invitation to discuss or dispute liability of a debt. Def. Mot. To Dis., 6.

Section 1692g mandates that debt collectors must provide to consumers a written notice of (1) the amount of the debt; (2) the name of the creditor to whom the debt is owed; and (3) a statement notifying the consumer that he or she has the right to dispute the validity of the debt within thirty days. 15 U.S.C. § 1692g(a). The language in a communication providing this required information is known as the validation notice. *Wilson,* 225 F.3d at 353–54. The purpose of the validation notice is to inform debtors of their rights and obligations to their creditors. *See Id.* at 354.

A debt collector violates the FDCPA unless it conveys the statutorily required information in the validation notice. "[I]n order to comply with the requirements of § 1692g, more is required than the mere inclusion of the statutory debt validation notice in the debt collection letter—the required notice must also be conveyed effectively to the debtor." *Id.* (citations omitted). The Third Circuit has repeatedly explained that "a collection letter will not meet the requirements of the Act where ... the validation notice is overshadowed or contradicted by accompanying messages or notices from the debt collector." *Id.* (citations omitted); *Caprio,* 709 F.3d at 149 (citations omitted); *Rosenau,* 539 F.3d at 222 (citations omitted). A validation notice "is overshadowed or contradictory if it would make the least sophisticated [debtor] uncertain as to her rights." *Wilson,* 225 F.3d at 354 (quoting *Russell v. Equifax A.R.S.,* 74 F.3d 30, 35 (2nd Cir.1996)). Moreover, a collection letter "is deceptive when it can be reasonably read to have two or more different meanings, one of which is inaccurate." *Id.* (quoting *Russell,* 74 F.3d at 35). Whether the language in a letter overshadows or contradicts the FDCPA validation notice is a question of law. *Caprio*, 709 F.3d at 147 (quoting *Wilson*, 225 F.3d at 353 n. 2). Courts evaluate the substance and form of a debt communication to determine whether the validation notice violated the FDCPA. *Caprio,* 709 F.3d at 152; *see, e.g., Wilson,* 225 F.3d at 361.

For example, in *Caprio,* the Third Circuit analyzed the language of the text, and the physical elements of a debt collection letter to determine whether the validation notice was overshadowed or contradicted by other information in that letter. *Caprio,* 709 F.3d at 151-52. While the letter contained a standard validation notice, the Third Circuit found that the least sophisticated consumer would be "uncertain as to his right" because the validation notice was overshadowed and contradicted by the form and substance of the other portions of the letter. *Id.* The letter stated, **"If we can answer any questions, or if you feel you do not owe this

amount, **please call** us toll free at **800–984–9115** or write us at the above address." *Id.* at 146. With

regards to substance, the court held that the language of the collection letter could at the very least

suggest to the "least sophisticated debtor" that he could call to dispute the debt if he felt that he do

not owe the listed amount. *Id.* at 151. Because disputes must be made in writing, the court noted

that the validation notice could "reasonably be read to have two or more meanings, one of which

is inaccurate." *Id.* at 149. Therefore, the least sophisticated consumer would be "uncertain as to

his rights." *Id.* (quoting *Wilson,* 225 F.3d at 354) (internal citation omitted)). Next, the court held

the letter also violated the FDCPA with respect to form. The letter drew attention to "please call"

and the phone number by using bolded font; yet, none of the mailing information was bolded. *Id.*

Additionally, the letter only included the mailing address in the letter head where it also displayed

the phone number in a larger font. *Id.* at 152. The court concluded that the form of the letter would

lead the "least sophisticated consumer" to take the easier, yet legally ineffective, mode of contact

to dispute the debt. *Id.*

     Similarly, the Third Circuit found a debt collection correspondence violated § 1692g in

*Laniado v. Certified Credit and Collection Bureau,* 705 F. App'x 87, 91 (3d Cir. 2017).  In that

case, the debt collector provided an appropriate validation notice in its initial communication to

the consumer. *Id.* at 87. Three weeks later, the debt collector sent a second letter without mention

of the first. Importantly, the second letter stated, "SHOULD THERE BE ANY DISCREPENCY,

PLEASE CALL . . ." Based on that language, the court found that it is "conceivable that the least

sophisticated debtor wishing to dispute the debt could follow the apparent instruction set forth in

a mailing received shortly before the deadline and make an ineffective toll-free phone call to do

so." *Id.* at 92. The Third Circuit reasoned that while there was no stylistic emphasis like in *Caprio,*

the second letter included three different phone numbers in five different locations, made no

reference to the first letter, and significantly, did not direct the reader's attention to the mailing address. *Id.* In totality, the court found the form and substance of the second letter overshadowed and contradicted the validation notice that appeared in the first letter. *Id. See also Kassin v. AR Resources, Inc.*, No. 16-4171, 2017 WL 1086760, at *4 (D.N.J. March 22, 2017) (holding the statement, "if you carry any insurance that may cover this obligation please contact [debt collector's] office at the number above," could reasonably be interpreted to suggest that the debt could be disputed by calling defendant debt collector.)

On the other hand, the Third Circuit in *Wilson* found that a one-sided collection letter that included a standard validation notice complied with the FDCPA. *Wilson,* 225 F.3d at 354. In *Wilson*, the entirety of the debt collection letter presented text in the "same font, size and color type-face," and the required validation notice was included in the third paragraph on the front side of the letter. *Id*. at 352. The court held that the physical features of the letter did not overshadow or undercut the standard validation notice. *Id* at 356*; see Graziano v. Harrison*, 950 F.2d 107, 111 (3d Cir. 1991) (holding that "the notice must be in print sufficiently large to be read, and must be sufficiently prominent to be noticed."). Above the validation notice, the letter provided the debtor with two options: "(1) an opportunity to pay the debt immediately and avoid further action, or (2) notify Quadramed [debt collector] within thirty days after receiving the collection letter that he disputes the validity of the debt." *Id*. The court held this language did not violate the FDCPA as it did not emphasize either option of paying or disputing the debt, and did not explicitly demand or threaten the debtor. *Id*. The appeals court concluded that the collection letter satisfied the notice requirements under § 1692g by effectively informing the consumer of his right without overshadowing or contradicting the validation notice. *Id.; see also Jewsevskyj v. Fin. Recovery Services Inc.,* 704 F. App'x 145, 148 (3d Cir. 2017)(holding "while font size and format could

render a notice unreadable, we cannot conclude that the notice here fits in that category as it is concise and legible, and is not misleading, confusing, or overshadowed by anything else in the letter.")

Here, the substance and form of the FRS letter do not violate the FDCPA. While the invitation to call the toll free number is directly next to the announced debt and above the validation notice, the letter evaluated as a whole would not lead to multiple interpretations by the least sophisticated consumer. In *Caprio and Laniado,* the substance of the messages welcoming the consumer to contact the debt collector by phone was contingent on whether the consumer had a reason to dispute the debt. For example, the letter in *Caprio* invited the consumer to contact the debt collector if he felt he did not owe the debt. Here, the sentence referencing the toll-free phone number has no mention of disputing the debt. Although it is placed next to the words—you owe $346.43—the only reference of disputing the debt is found in the standard validation notice paragraph below. Therefore, the FRS letter does not "instruct or suggest" an alternative method of disputing the debt beyond what the letter instructs in the validation notice. *See Riccio* v. *Sentry Credit, Inc.*, No. 17-1773, 2018 WL 638748, at *6 (D.N.J. Jan 31, 2018). (finding that including a phone number, mailing address and website in three equally sized Display Boxes "do[es] not instruct nor suggest an alternative method of disputing the alleged debt, but merely provided the consumer with the debt collector's contact information").

Additionally, nothing about the form of the FRS letter overshadows or contradicts the information in the validation notice. Unlike the bolded telephone number in *Caprio,* the FRS letter does not emphasize any portion of the document in a manner that could lead the least sophisticated consumer to misunderstand his or her rights. Additionally, like the collection letter in *Wilson*, the FRS letter is one-sided, presented in a single font that is sufficiently large to read, and limited to a

single correspondence. While the phone number appears in five different locations, the mere inclusion of contact information other than a debt-collector's mailing address does not in itself create a claim under 15 U.S.C § 1692g. *See Riccio,* 2018 WL 638748, at \*6. The Court finds the form of the FRS letter complies with the FDCPA.

Finally, Plaintiff contends that the FRS letter does not inform the consumer that he *"must"* dispute the debt in writing. Compl*.,* ¶ 49. However, the language of the validation notice belies Plaintiff's argument as the FRS letter provides explicit instructions on how to dispute the debt. It reads:

> "Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt or any other portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification."

Significantly, the least sophisticated consumer is charged with reading the entire document, and assumed to understand the plain language of a standard validation notice. *Hernandez v. Mercantile Adjustment Bureau LLC*, 2013 WL 6178594 (D.N.J Nov. 22, 2013) (noting, "a least sophisticated debtor would understand that that notification mentioned in the second sentence refers to the notification in the first sentence.") (internal citation omitted)). *See Graziano*, 950 F.2d at 112 ("[G]iven the entire structure of section 1692g, subsection (a)(3) must be read to require that a dispute, to be effective, must be in writing.").  By using the word "unless," the first sentence of the FRS validation notice informs the consumer the consequences if he or she fails to dispute the debt. Then, the second sentence provides instructions on how to dispute the debt and the effect of disputing a debt. Specifically, the letter states "if you notify this office in writing. . ." Indeed, the FRS letter uses language that closely tracks the statutory language provided in §1692g(a), without providing confusing, alternative ways to dispute the debt that would contradict the

validation notice. *See also Hernandez*, 2013 WL 6178594, at *3; *Sebrow v. NCO Fin. Sys., Inc.*, No. 08-1725, 2009 WL 2707341, *3 (E.D.N.Y. Aug. 27, 2009) (finding that similar language to that challenged here did "not violate the requirements of § 1692g(a)" since it closely tracked the language of § 1692g(a)(3)-(5)); *Borucki v. Vision Fin. Corp.*, No. 13-386, 2013 WL 2477067, at *2-4 (E.D. Wis. June 7, 2013) (same); *Moore v. Ingram & Assoc., Inc.*, 805 F. Supp. 7, 8-9 (D.S.C. 1992)(same); *Aronson v. Commercial Fin. Servs., Inc.*, No. 96-2113, 1997 WL 1038818, at *3 (W.D. Pa. Dec. 22, 1997).

Thus, the validation notice plainly describes writing as the only permissible method of disputing a debt. As such, I reject Plaintiff's argument in this context.

Accordingly, Plaintiff has failed to state claim under § 1692g.

IV.    **15 U.S.C § 1692e**

Plaintiff's § 1692e claim is premised on the same allegations as his § 1692g claim. In that connection, Plaintiff argues that the Letter at issue here is deceptive because it can reasonably be read to have two or more different meanings, one of which is inaccurate. Specifically, Plaintiff claims that the least sophisticated consumer can read the letter to mean he can dispute the alleged debt by 1) calling, 2) going online, or 3) writing.

Under § 1692e, "the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." "The scope of § 1692e(10) is particularly broad and encompasses virtually every FDCPA violation, including those not covered by the other subsections. *Reed v. Pinnacle Credit Servs., LLC,* No. 09–544, 2009 WL 2461852, at *4 (E.D. Pa. Aug. 11, 2009) (citing *Fed. Fair Lending & Cred. Prac. Man.* § 14.09); *Kinel v. Sheran Acquisition II,* No. 05–3456, 2007 WL 2049566, at *2 (S.D.N.Y. Jul. 13, 2007) (citing F.T.C. Staff Commentary on the FDCPA, 53 Fed. Reg. 50,097,50,105 (Dec. 13,

1988)). Indeed, while the Third Circuit has described § 1692e(10) as a "catchall-type provision," *Rosenau,* 539 F.3d at 224, § 1692g is a far more specific provision. *Hernandez v. Mercantile Adjustment Bureau, LLC,* No. 13–CV–843, 2013 WL 6178594, at *3 (D.N.J. Nov.22, 2013). Hence, "[w]hen allegations under 15 U.S.C. § 1692e(10) are based on the same language or theories as allegations under 15 U.S.C. § 1692g, the analysis of the § 1692g claim is usually dispositive." *Caprio,* 709 F.3d at 155 (3d Cir. 2013).

Accordingly, for the reasons why Plaintiff fails to state a claim under § 1692g, his claim under § 1692e also fails for the same reasons.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is **GRANTED**, and the Complaint is dismissed.


DATED:  June 22, 2018                                      /s/ Freda L. Wolfson
                                                           Hon. Freda L. Wolfson
                                                           U.S. District Judge